UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-338-MOC
3:17-cr-174-MOC-DSC-1

| DONALD FRANKS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | **REDACTED** ORDER |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1].

### I. BACKGROUND

Petitioner was charged in the underlying criminal case with a single count of possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count One). [3:17-cr-174 ("CR"), Doc. 1]. The Government filed an Information pursuant to 21 U.S.C. § 851 setting forth a prior conviction for a felony drug offense. [CR Doc. 7].

Petitioner pleaded guilty to Count One pursuant to a written Plea Agreement in exchange for the Government's dismissal of the § 851 Information. [CR Doc. 15 at ¶¶ 1, 2]. Petitioner admitted that he is, in fact, guilty as charged in Count One. [Id. at ¶ 1]. The Plea Agreement explains that the statutory minimum and minimum sentence is a minimum of 10 years' imprisonment and a maximum of life, a fine not greater than $10 million, or both, and at least five years of supervised release. [Id. at ¶ 5]. The parties agreed to jointly recommend that: the amount

1

of methamphetamine (actual) that was known to or reasonably foreseeable by Petitioner was in excess of 1.5 kilograms, but less than five kilograms; the plea is timely for purposes of acceptance of responsibility, if applicable; and if the Court determines from Petitioner's criminal history that the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal provision (U.S.S.G. § 4B1.4) of the U.S. Sentencing Guidelines applies, such provision may be used in determining the sentence. [Id. at ¶ 8]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without unless the Factual Basis itself reserves the Petitioner's right to object to a particular fact. [Id. at ¶ 15].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; not to be compelled to incriminate himself; and not to have his statements during the course of the plea discussions to be used against him should be attempt to withdraw his guilty plea or in any post-conviction proceedings challenging the knowing and voluntary nature of the guilty plea. [Id. at ¶¶ 16-18]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or

2

post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 19]. Petitioner expressly waived the right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel and prosecutorial misconduct, and the claim that the Court had erroneously determined that Petitioner qualifies as a career offender pursuant to U.S.S.G. § 4B1.1. [Id. at ¶ 20]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 31].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On May 6, 2017, Drug Enforcement Administration (DEA) agents and task force officers used a cooperating defendant (CD) to make contact with Donald FRANKS. Two phone calls were placed on a cell phone by the CD at Mecklenburg County jail to FRANKS. During the calls, FRANKS and the CD agreed to meet in Charlotte the following day to exchange methamphetamine.
>
> On May 7, 2017, an undercover officer used the same cell phone to text FRANKS an address in Gastonia where FRANKS could meet the CD. At 11:53 a.m., FRANKS texted the same cell phone to say that he was leaving from Atlanta. At approximately 1:30 p.m., the DEA and Gaston County Police Department (GCPD) officers began surveillance in the area of I-85 North looking for FRANKS in a car with Florida tags. At approximately 3:35 p.m., while traveling on I-85 North, GCPD officers observed a tan Mercedes Benz with Florida tags serve into a different lane of travel on two occasions, causing other vehicles to brake to avoid a collision. A traffic stop was conducted based on a suspicion of impaired driving and the Mercedes was stopped in the middle of an exit ramp. Officers approached the driver who was later identified as FRANKS. The officers immediately detected a strong odor of marijuana coming from the vehicle.
>
> GCPD officers conducted a vehicle search and discovered a grocery bag behind the passenger seat containing what appeared to be methamphetamine. Within the bag, four packages were seized and weighed approximately 2.26 kilograms, including packaging. The field test for the suspected methamphetamine came back positive. FRANKS was arrested and taken to GCPD for an interview where he waived his Miranda rights. During the interview, **FRANKS**

3

> **acknowledged he was supposed to deliver the methamphetamine** to an individual … at a Super 8 motel in Gastonia.
>
> The suspected methamphetamine was tested at the DEA Southeast Laboratory on March 13, 2018. The DEA analyst found that the substance was **d-Methamphetamine Hydrochloride weighing just over 1,991 grams**. The methamphetamine was found to be **99% pure**.

[CR Doc. 30 at 1-2] (paragraph numbers omitted; emphasis added).

On July 10, 2019, a Rule 11 hearing came before the Honorable David Keesler, United States Magistrate Judge. [CR Doc. 63]. Petitioner stated under oath that he received a copy of the Indictment, discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to him. [Id. at 4-5]. He admitted that he is, in fact, guilty of Count One. [Id. at 9]. Petitioner agreed that he understood that pleading guilty may cause him to be deprived of certain civil rights, and that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 6-8]. Petitioner acknowledged the rights he was waiving by pleading guilty, including the waiver of his appeal and post-conviction rights, and stated his understanding that the case would proceed directly to sentencing. [Id. at 8-9, 12-13].

The Plea Agreement was summarized in open court. [Id. at 9-11]. Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 12-13]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 13-14]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a

4

light sentence other than the terms of the Plea Agreement. [Id. at 14]. Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id. at 14].

The Presentence Investigation Report (PSR) scored the base offense level as 36 because the offense is a violation of § 841(a)(1) and Petitioner is responsible for 1.99 kilograms of actual methamphetamine pursuant to U.S.S.G. § 2D1.1(a)(5). [CR Doc. 38 at ¶ 17]. No enhancements were added. [Id. at ¶¶ 18-23]. Three levels were deducted for acceptance of responsibility based on Petitioner's statement " I do not deny the fact I was caught with possession of meth." [Id. at ¶¶ 13, 24-25]. This resulted in an adjusted offense level of 33. [Id. at ¶ 26]. Petitioner had nine criminal history points a criminal history category of IV. [Id. at ¶¶ 38-39]. The resulting advisory guideline range was 188 to 235 months' imprisonment, however, the statutorily required sentence is 20 years' imprisonment, so the guideline term of imprisonment was 240 months' imprisonment. [Id. at ¶ 60]. The PSR notes with regards to the impact of the Plea Agreement that, should the Government dismiss the § 851 Information pursuant to the Plea Agreement, the statutory penalty would be 10 years to life imprisonment, and the guideline range would be 188 to 235 months' imprisonment. [Id. at ¶ 61].

[redacted]

[REDACTED]

A sentencing hearing came before the Court on February 25, 2019. [CR Doc. 64]. Petitioner stated under oath that, if he were asked the same questions from the Rule 11 hearing again, his answers would be the same, and that he was pleading guilty because he committed the offense charged in Count One. [Id. at 2-3]. Petitioner stated that he went over the PSR with counsel and understood it. [Id. at 3-4]. The defense had filed one objection to the PSR with respect to Petitioner's criminal history, which the Court denied. [Id. at 5]. The parties agreed that, once the Government dismissed the § 851 Information, the mandatory minimum would drop to 120 months' imprisonment, and the guideline range would be 188 to 235 months' imprisonment. [Id. at 6-7]. Defense counsel requested a sentence at the minimum mandatory of 120 months' imprisonment. [Id. at 17].

[REDACTED]

The Court sentenced Petitioner to 148 months' imprisonment, followed by five years of supervised release. [CR Doc. 44]. Petitioner did not appeal.

Petitioner filed a Motion to Vacate in 2020 arguing, *inter alia*, that counsel was ineffective for failing to file a notice of appeal on his behalf, Case No. 3:20-cv-296-MOC. The Court granted

6

the claim of ineffective assistance regarding the notice of appeal, dismissed the other claims, and entered an Amended Judgment so that the Petitioner could appeal. Franks v. United States, 2020 WL 5913996 (W.D.N.C. Oct. 6, 2020). Petitioner filed an appeal from this Order, then voluntarily dismissed it. United States v. Franks, 2020 WL 9259663 (4th Cir. Nov. 10, 2020).

The Court entered an Amended Judgment in the criminal case [CR Doc. 52] and Petitioner filed a direct appeal with the assistance of counsel [CR Doc. 58]. He argued: (1) "Franks was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney failed to ask for a dismissal of all charges in the District Court, when it should have been clear to him that the stop and seizure of Franks' car was illegal;" and (2) that his sentence was procedurally unreasonable.[1] See [Fourth Cir Case No. 20-4540 ("APP") Doc. 18]. The Fourth Circuit dismissed the appeal on October 19, 2021. United States v. Franks, 2021 WL 4860722 (4th Cir. Oct. 19, 2021). It found that ineffective assistance of counsel was not apparent on the face of the record such that the ineffective assistance claim should be raised, if at all, in a § 2255 action; and that the sentencing claim was waived by Petitioner's knowing and voluntary appellate waiver.

Petitioner filed the instant pro se § 2255 Motion to Vacate on July 21, 2022.[2] [Doc. 1]. He argues (restated and renumbered): (1) counsel was ineffective for: failing to adequately investigate and litigate the case prior to Petitioner's guilty plea, misadvising Petitioner about the guilty plea, failing to object at sentencing, failing to file a notice of appeal; (2) the Court erred in calculating the sentence; and (3) "prosecutorial misconduct." [Doc. 1 at 3-6]. He seeks a sentence reduction.

---

[1] ████████████████████████████████████████████

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

[Id. at 9]. Petitioner has attached his initial brief on direct appeal as the "Memorandum of Support" to his Motion to Vacate. [Doc. 1-1].

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court also determines that no response from the Government is required.

## III. DISCUSSION[3]

**(1) Ineffective Assistance of Counsel**

The Petitioner raises a number of claims of ineffective assistance of counsel with regards to the pre-plea representation, the guilty plea's voluntariness, sentencing, and counsel's failure to file a notice of appeal.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions,

---

[3] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

8

the accused has the right to the assistance of counsel for his defense.  See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment.  See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  A petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong.  Strickland, 466 U.S. at 670.

  **A. Pre-Plea Performance**

First, Petitioner argues that counsel provided ineffective assistance prior to his entry of the guilty plea by, for instance, failing to determine the accuracy of lab results concerning drug purity, adequately investigate the legality of the search and seizure, and file motions to suppress and to dismiss. [Doc. 1 at 5-6; Doc. 1-1 at 15-18].

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). A knowing and voluntary guilty plea waives any "independent claims relating to the deprivation

9

of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. In order to be competent to plead guilty, the trial court must determine that the defendant made a knowing and voluntary waiver of his trial rights. See Godinez v. Moran, 509 U.S. 389, 400-01 (1993).

Petitioner stated at the Rule 11 hearing that his mind was clear, he understood that he was there to enter a guilty plea, and that he was not under the influence of alcohol or drugs. [CR Doc. 63 at 3-4]. He stated that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. [Id. at 5-9, 12-13]. He further stated that he was pleading guilty because he is guilty of Count One, that he had fully discussed any possible defenses with counsel, that he was satisfied with counsel's services, and that the plea was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. [Id. at 9, 14]. The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). Petitioner's claims of pre-plea ineffective assistance of counsel were waived by Petitioner's knowing and voluntary guilty plea and, accordingly, they are dismissed and denied.

**B.     Involuntary Plea**

Petitioner appears to claim that his plea was involuntary because counsel advised him to take the plea and misadvised him that: the drug lab's purity test results would not affect the sentence; and "a 4 level enhancement that was threaten[ed] by AUSA would not be applied in

exchange for guilty plea." [Doc. 1 at 3, 5].

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

As a preliminary matter, the Plaintiff's general claim that counsel advised him to plead guilty, and his reference to a "threatened four-level enhancement," are too vague and conclusory to support relief. See generally United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without any further investigation). Moreover, the Petitioner's present suggestion that counsel made promises about sentencing is conclusively refuted by the record. Petitioner admitted in the Plea Agreement and under oath at the Rule 11 hearing that: he understood the charges; he discussed the case and any possible defenses with counsel; he was satisfied with counsel's services; he is guilty of Count One;

11

the plea was knowingly and voluntarily entered; and he was not threatened, intimidated, forced, or promised anything other than the terms of his plea agreement, to induce him to plead guilty. [CR Docs. 29, 63]. He also acknowledged his minimum and maximum sentencing exposure, that the sentence had not yet been determined, that any estimate of the likely sentence was a prediction rather than a promise, that the Court had the final discretion to impose any sentence up to the statutory maxim, and that Petitioner was responsible for in excess of 1.5 kilograms, but less than five kilograms, of methamphetamine actual. [CR Doc. 29 at ¶¶ 5, 7-8]. In the Factual Basis, the Petitioner admitted that officers found just over 1,991 grams of methamphetamine, that was 99% pure, was found in his vehicle. [CR Doc. 30 at 1-2]. The Petitioner again acknowledged his guilt in his statement to probation that is incorporated in the PSR, and at the sentencing hearing. [CR Doc. 38 at ¶ 14; CR Doc. 64 at 3].

Petitioner's present conclusory and self-serving contentions that he was forced or coerced to plead guilty, did not understand his sentencing exposure or any other terms of the Plea Agreement, or was promised anything to induce him to plead guilty, are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Moreover, Petitioner has failed to demonstrate prejudice. He does not claim that he would not have pleaded guilty but for counsel's allegedly ineffective assistance and he does not seek to withdraw his guilty plea; he only seeks a reduced sentence. [Doc. 1 at 9]; see Hill, 474 U.S. at 59.

12

Nor would it have been rational for him to proceed to trial in light of the strong evidence of his guilt as set forth in the Factual Basis, and the great benefit he obtained by pleading guilty, *i.e.*, the Government's dismissal of the § 851 Information, a three-level reduction for acceptance of responsibility ███████████████████████████████████████ █. It would not have been objectively reasonable, under these circumstances, for the Petitioner to have proceeded to trial. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); Fugit, 703 F.3d at 259 (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

Accordingly, the Petitioner's claim that his plea was rendered involuntary by ineffective assistance of counsel is dismissed and denied.

### C. Sentencing

Petitioner claims that the Government threatened him with a four-level enhancement that was not supposed to apply if he pleaded guilty and despite this agreement yet, "[a]t sentencing, the enhancement was applied subjecting defendant to a higher sentencing range…." [Doc. 1 at 3]. It appears that Petitioner is arguing that counsel was ineffective for failing to object.

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

13

As a preliminary matter, Petitioner's claim about a four-level sentencing enhancement is too vague and conclusory to support relief. See Dyess, 730 F.3d at 359.

Moreover, Petitioner's claim is conclusively refuted by the record. No four-level enhancement was applied. [See CR Doc. 38 at ¶¶ 17-26]. Petitioner has failed to identify any sentencing objection that reasonably effective counsel would have raised. Nor has he attempted to demonstrate prejudice by explaining how any such objection had a reasonable probability of resulting in a lower sentence, had counsel performed differently in any way. Accordingly, the Petitioner's claim that counsel was ineffective with regards to sentencing is dismissed and denied.

### D. Notice of Appeal

Next, Petitioner argues that counsel was ineffective for failing to file a notice of appeal on his behalf. [Doc. 1 at 3].

This claim is moot, as the Petitioner was granted relief on this claim in a prior § 2255 proceeding and he had the opportunity to prosecute a direct appeal, which he did with the assistance of counsel.

### 2. Sentencing Error

Petitioner raises the same claims of substantive sentencing errors that he presented on direct appeal. [Doc. 1-1 at 18-22].

The Fourth Circuit dismissed the claims on direct appeal because they were barred by Petitioner's knowing and voluntary appellate waiver. The post-conviction claims are likewise barred. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) (an appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made); Lemaster, 403 F.3d at 200 (the Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement). Moreover, allegations of

14

sentencing errors such as guideline miscalculations are not generally cognizable on § 2255 review. See Davis v. United States, 417 U.S. 333, 346 (1974) (a sentencing error is not cognizable on § 2255 review unless it is constitutional, jurisdictional, or amounts to a "fundamental defect which inherently results in a complete miscarriage of justice."); United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999) (barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding."); United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). Therefore, Petitioner's substantive sentencing claims are dismissed and denied.

### 3. Prosecutorial Misconduct

Finally, Petitioner makes several allegations of "prosecutorial misconduct." [Doc. 1 at 3, 5, 6]. Petitioner appears to argue that the Government improperly threatened him with a four-level enhancement, and that the prosecution unilaterally determined the drug amount without having disclosed the lab report to the defense. [Id. at 5].

As previously discussed, Petitioner's allusions to an unspecified four-level enhancement are too vague and conclusory to support § 2255 relief. Moreover, his suggestions of generally prosecutorial misconduct, threats by the Government, and the Government's unilateral imposition of an unfounded drug amount are conclusively refuted by the record. Petitioner stated under oath that his guilty plea was knowing and voluntary and was not the product of any threats, promises (other than those contained in the Plea Agreement) or coercion, that he was pleading guilty because he is guilty of possession with intent to distribute methamphetamine, and that he is responsible for more than 1,991 grams of 99% pure methamphetamine. See Section 1(A), (B), *supra*. Accordingly, Petitioner's claims of prosecutorial misconduct are dismissed and denied.

15

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied. Moreover, the Court finds that the portions of this Order referring to ███████████████████████████████████ must be permanently sealed because they refer to sealed portions of the criminal record, and may give rise to genuine security concerns. The Clerk of Court will, therefore, be instructed to permanently seal the unredacted Order ("Sealed Order"), and to separately docket a redacted version of the Order ("Redacted Order") that will be made available to the public.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED** and **DENIED**.

2. The Clerk is instructed to docket the Redacted Order on the public docket, and is further directed to docket and permanently **SEAL** the unredacted Sealed Order.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

The Clerk is respectfully directed to mail copies of the Redacted Order and the Sealed Order to the Petitioner, and to close this case.

Signed: August 3, 2022

Max O. Cogburn Jr
United States District Judge